UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN NIXON,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

CIVIL ACTION NO. 3:25-cv-00488

(SAPORITO, J.)

# MEMORANDUM

Plaintiff John Nixon, a prisoner proceeding *pro se*, has filed a complaint (Doc. 1) against six defendants, alleging that he has been wrongly denied access to the Medication-Assisted Treatment ("MAT") program at FCI-Allenwood. Pursuant to 28 U.S.C. § 1915A, the Court will permit Nixon to proceed on a claim for injunctive relief under the Rehabilitation Act against the Bureau of Prisons and dismiss all other claims.

## I. BACKGROUND

As relevant here, "medication assisted treatment" refers to the use of certain medications that reduce cravings for opioids, combined with counseling and therapy, to treat opioid use disorder. *See* (Doc. 1-4 at 2-4).

Nixon alleges[1] as follows: In 2018, prior to his incarceration, he was prescribed Percocet for ongoing pain from a car accident. He eventually became dependent on the drug and was diagnosed with opioid use disorder. He "began to be treated successfully"[2] with suboxone, until he was arrested in March 2021, and held in pretrial detention at a facility that did not offer MAT. In May 2023, after pleading guilty in federal court to a felon in possession charge[3], he was sentenced to 77 months' imprisonment in Bureau of Prisons ("BOP") custody. According to Nixon, the sentencing court recommended that he "continue to be allowed treatment on suboxone in the MAT Program in the BOP." The judgment

---

[1] In summarizing Nixon's allegations, the Court draws primarily from the complaint form itself (Doc. 1 at 1-7), a written statement titled "Violation of My Rights" (Doc. 1 at 8-15), and an attached filing (Doc. 1-1), which the Court construes as a supplement to the complaint. Nixon also attaches numerous exhibits, some of which contradict the allegations in the complaint. Where there is a contradiction, the exhibits control for purposes of evaluating the complaint. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

[2] Nixon's precise history of opioid treatment is unclear, because he also alleges that he has been "in treatment for well over ten years on MAT." *See* (Doc. 1 at 8, 14).

[3] The Court takes judicial notice of Nixon's criminal docket. *See United States v. Nixon*, No. 4:21-CR-00140 (M.D. Pa., filed May 13, 2021).

itself indicates that the court "recommended that the BOP afford [Nixon] an opportunity to participate in the 500 hour Residential Drug Abuse Program." *See United States v. Nixon*, No. 4:21-CR-00140 (Doc. 95 at 2) (M.D. Pa., May 9, 2023).

Nixon was placed at FCI-Allenwood in June 2023. Nixon alleges he "has repeatedly asked to be placed on suboxone but was and is denied by defendants for no valid medical reason, calling him a 'junkie' for daring to grieve the issue." He was offered an alternative medication, Vivitrol, but refused it because he had an allergic reaction to Vivitrol prior to incarceration. Nixon alleges that he told Dr. Buschman, Nurse Trump, and an unnamed "medical screening nurse" at FCI-Allenwood that Vivitrol was "not a viable option." In response, Dr. Buschman allegedly told him "you get nothing," and to "stop being an addict and take Vivitrol instead." Trump allegedly "told Nixon that he should stop being such a junkie and take what is offered, the Vivitrol, or go lay down."

Nixon was placed on a waiting list for "consideration in the MAT program"[4] and told that "clinical guidelines" dictated that inmates closest

---

[4] It is unclear from the complaint and attached exhibits why Vivitrol could be offered while Nixon was on the waiting list, but suboxone apparently could not.

- 3 -

Case 3:25-cv-00488-JFS-SA   Document 11   Filed 04/04/25   Page 4 of 14

to release had the highest priority. Nixon attaches correspondence with various medical and MAT staff, including Trump, to his complaint. Briefly summarized, he told these individuals that he had been participating in MAT programs before coming to prison, and he complained that he was no longer receiving these medications at FCI-Allenwood, the replacement medications offered to him were ineffective, and he should be receiving MAT treatment. An excerpt from the BOP's clinical guidelines, also attached to the complaint, indicates that "[w]hen an inmate arrives to an institution on medications for OUD, it should be continued unless contraindicated." (Doc. 1-4 at 11). However, the medical staff noted that while Nixon claimed to have arrived at FCI-Allenwood "on suboxone for over 10 years," he had no active suboxone prescription when he arrived. (*Id.* at 72). The present state of Nixon's treatment is described in Trump's February 4, 2025, response to Nixon:

> "[I]f you are interested in the Vivitrol injection, the injectable form of narcan . . . respond to this email and the required testing will be ordered. If you do not wish to be placed on this medication, your name will remain on the waitlist. We are currently following clinical practice guidelines. The guidelines prioritize inmates releasing within the next 90 days and expanding out from there as we are able."

(*Id.* at 70).

to release had the highest priority. Nixon attaches correspondence with various medical and MAT staff, including Trump, to his complaint. Briefly summarized, he told these individuals that he had been participating in MAT programs before coming to prison, and he complained that he was no longer receiving these medications at FCI-Allenwood, the replacement medications offered to him were ineffective, and he should be receiving MAT treatment. An excerpt from the BOP's clinical guidelines, also attached to the complaint, indicates that "[w]hen an inmate arrives to an institution on medications for OUD, it should be continued unless contraindicated." (Doc. 1-4 at 11). However, the medical staff noted that while Nixon claimed to have arrived at FCI-Allenwood "on suboxone for over 10 years," he had no active suboxone prescription when he arrived. (*Id.* at 72). The present state of Nixon's treatment is described in Trump's February 4, 2025, response to Nixon:

> "[I]f you are interested in the Vivitrol injection, the injectable form of narcan . . . respond to this email and the required testing will be ordered. If you do not wish to be placed on this medication, your name will remain on the waitlist. We are currently following clinical practice guidelines. The guidelines prioritize inmates releasing within the next 90 days and expanding out from there as we are able."

(*Id.* at 70).

Nixon filed grievances within the prison, a "letter of intent with the Attorney General's office claiming medical negligence," and a written claim to the U.S. Department of Justice claiming a violation of the Rehabilitation Act, to no avail. He now asserts claims under the Federal Tort Claims Act, the Eighth Amendment, and the Rehabilitation Act, against the United States, the BOP, Buschman, Trump, the Warden of FCI-Allenwood, and an Associate Warden ("Callis"). He asserts that he suffers "daily withdrawal type symptoms" including headaches, sweats, chills, anxiety, depression, and numerous others.

## II.   LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see*

*generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the

complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

III. DISCUSSION

A. Federal Tort Claims Act

Nixon asserts a claim of medical negligence under the Federal Tort Claims Act ("FTCA"). Generally speaking, "[t]he United States, 'as a sovereign, is immune from suit unless it consents to be sued.'" *See S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012) (quoting *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008)). The FTCA, however, authorizes suits against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

As explained by the Supreme Court, in order to state a claim under

the FTCA, a plaintiff must plausibly allege the following six elements: "'[1] [a claim] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *See Brownback v. King*, 592 U.S. 209, 212 (2021) (quotations and citations omitted). In addition, the plaintiff must present his administrative claim "to the appropriate Federal agency[,]" and receive a final decision on the claim, before filing suit against the United States. 28 U.S.C. § 2675(a). This requirement is jurisdictional, and the claim is therefore subject to dismissal if Nixon does not plausibly allege that he has exhausted the claim process. *See Toomes v. U.S.P. Canaan*, No. 3:17-CV-0744, 2017 WL 2734430, at *3 (M.D. Pa. June 26, 2017).

The complaint indicates that Nixon has not complied with the exhaustion requirement. He alleges only that he submitted a "letter of intent" to the Attorney General "claiming medical negligence." He claims

to have received a decision from the Department of Justice on a claim under the Rehabilitation Act[5], but a claim under the Rehabilitation Act is not a tort claim and would not serve to exhaust his FTCA claim. Accordingly, Nixon's FTCA claim will be dismissed without prejudice.

### B. Eighth Amendment/*Bivens* Claims

Nixon asserts Eighth Amendment claims against all defendants. The Supreme Court has recognized an implied right of action for damages against federal officials for constitutional violations. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, the right does not extend to cases presenting a different "context" from those previously recognized by the Supreme Court. "If the case is different in a meaningful way from previous *Bivens* cases decided . . . then the context is new." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). If the case presents a new context, the Court must consider whether there are other "special factors" that cast doubt on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and

---

[5] The Court infers that Nixon is referring to a response to a complaint he filed with the Civil Rights Division at the Department of Justice, which was itself denied for his failure to exhaust administrative remedies. *See* (Doc. 1-3 at 24-25).

weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. Ultimately, "if a court concludes that even a single reason exists to pause before applying *Bivens* in a new context, then special factors counseling hesitation exist and a *Bivens* remedy does not lie." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quotations omitted).

The Supreme Court has recognized one case in which an Eighth Amendment claim for damages was permitted against a federal prison officer for denial of medical care. In that case, an inmate with asthma was kept in prison against the advice of doctors, denied medical attention for eight hours after a severe asthma attack, given drugs that made his attack more severe, treated with a faulty respirator, and not timely taken to the hospital, which resulted in his death. *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980).

This case presents a different context. "Although the Court does not discount any discomfort, pain, or emotional distress [Nixon] has suffered," the complaint does not describe an imminent medical emergency nor suggest that his symptoms are life-threatening.[6] As Nixon

---

[6] *Gayle v. Mowatt et al.*, No. 1:23-CV-00861, 2025 WL 903832, at *15-16 (M.D. Pa. Mar. 25, 2025); *see also Holton v. Finley*, No. 4:21-CV-
*(continued on next page)*

describes it, the *status quo* has been in effect since well before his June 2023 arrival at FCI-Allenwood. Other factors counsel against extending *Bivens* into this context, such as Nixon's access to the prison's administrative remedy program (which was unavailable to the estate of the deceased plaintiff in *Carlson*), and the fact that provision of chronic medical care "is a specialized activity requiring a high degree of training and qualification," which courts are ill-equipped to regulate, particularly in the prison context.[7]

Moreover, the complaint as pled does not state an Eighth Amendment violation. Such a claim would require "(1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d

---

737, 2024 WL 1919238, at *9-10 (M.D. Pa. Mar. 21, 2024), report and recommendation adopted, 2024 WL 1913172 (M.D. Pa. May 1, 2024).

[7] *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *9 (M.D. Pa. Mar. 8, 2023) (citation omitted); *Holton*, 2024 WL 1919238, at *10.

Cir. 1999)). Nixon infers deliberate indifference[8] because the defendants did not prescribe him suboxone, but a prisoner "does not have the right to choose a specific form of medical treatment." *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (citation omitted). The fact that Nixon had not taken suboxone (or received any other medically assisted treatment) for a substantial period prior to arrival at FCI-Allenwood cuts against any inference that the providers were deliberately indifferent for declining to provide it. Contrary to Nixon's argument, that decision appears consistent with the clinical guidelines he attaches. While Nixon seems to equate the denial of suboxone with "denial of treatment," the correspondence attached to the complaint demonstrates that he was offered and received other treatment for his various symptoms from the prison medical providers. *See, e.g.*, (Doc. 1-4 at 54-56, 61-62). While some of these medical judgments may have been incorrect, and he may well have benefitted from earlier admission to the MAT program, this does not suggest that he has been "denied treatment" or that any defendant was deliberately indifferent to his medical needs.

---

[8] The abusive remarks Nixon attributes to Buschman and Trump, although deplorable, do not indicate that they believed the medical treatment they were offering was inadequate.

## C. Rehabilitation Act Claims

Nixon asserts Rehabilitation Act claims against all defendants. To state a plausible claim under Section 504 of the Rehabilitation Act, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). To seek compensatory damages, he "must also show intentional discrimination under a deliberate indifference standard." *Id.* at 289.

Nixon plausibly alleges that he suffers from opioid use disorder, has essentially been excluded from participation in the MAT program, and ultimately has been denied appropriate medical care because the alternative medications offered to address his disability have been ineffective. Although the complaint does not demonstrate deliberate indifference for the reasons previously described, these allegations support a Rehabilitation Act claim.[9] Of the named defendants, the only

---

[9] *See, e.g., Roman v. Cnty. of Chester*, No. 23-CV-4032-KSM, 2024 WL 2136010, at *17 (E.D. Pa. May 13, 2024) (permitting claim where plaintiff "alleged that he suffers from opioid use disorder and has been intentionally excluded from participation in the MAT program or
*(continued on next page)*

appropriate defendant for this claim is the BOP, the entity that receives federal funding. *See Yeh v. United States Bureau of Prisons*, No. 3:18-CV-943, 2019 WL 3564697, at *3 (M.D. Pa. Aug. 6, 2019) (listing cases); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 [of the Rehabilitation Act] against recipients of federal financial assistance, but not against individuals.").

## IV. CONCLUSION

Nixon may proceed on his claims for preliminary and permanent injunctive relief against the BOP, and the BOP will be ordered to separately respond to his motion for preliminary injunctive relief. An appropriate order follows.

Dated: April 4, 2025

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge

---

provided an acceptable alternative treatment"); *Strickland v. Delaware Cnty.*, No. 21-CV-4141, 2022 WL 1157485, at *3 (E.D. Pa. Apr. 19, 2022) (defendants "failed to undertake any individualized review of Strickland's situation to determine whether he could be safely provided with his prescribed medical treatment, provide Strickland with an adequate alternative treatment, or otherwise reasonably accommodate" his opioid use disorder).